FARMERS MUTUAL FIRE INSURANCE COMPANY OF LAPORTE COUNTY, INDIANA, v. OLSON.

[No. 10,442. Filed June 25, 1920. Rehearing denied December 17, 1920.]

1. INSURANCE.—*Fire Policy.*—*Transfer of Interest.*—Under a fire policy stipulating against sale, conveyance or change in the interest of the parties therein in any manner, where under a contract of sale the agreed consideration and a deed to the property had been deposited with a third person, and at the time of the fire nothing remained to do but to make delivery thereof to the parties, and the purchaser had taken and was in possession, there had been such a change not only of the interest but of the title and possession of the real estate, including the dwelling house involved, as invalidated the policy. p. 456.

2. ESCROWS—*Full Performance of Conditions.*—*Depositary as Agent of Grantee.*—Where a deed is in escrow and the conditions authorizing its delivery to the grantee are fully performed, the depositary then becomes agent for the grantee for whom he thereafter holds the deed. p. 457.

3. INSURANCE.—*Transfer of Equitable Interest and Possession.* —*Invalidation of Policy.*—When a fire policy stipulates against change in interest, and a third person becomes the owner of the equitable interest in the real estate and takes possession, the policy is invalidated though legal title has not passed. p. 457.

4. INSURANCE.—*Fire Policy.*—*Change of Interest in Real Estate.*—*Effect on Personalty Covered by Same Policy.*—Where real property and personal property therein were so situated

that the risk upon the building could not be affected without affecting the risk upon the personalty, a fire policy on both was entire and indivisible, and a breach of its condition by effecting a change in interest as to the real property invalidated the policy not only as to the house but as to the personal property situated therein.   p. 457.

5.  NEW TRIAL. — *Answers to Interrogatories.* — *Inconsistency with Verdict Not Ground for New Trial.*—The inconsistency with the verdict of answers to interrogatories is not a ground for new trial.   p. 458.

From Laporte Circuit Court; *James F. Gallaher,* Judge.

Action by Oscar E. Olson against the Farmers Mutual Fire Insurance Company of Laporte County, Indiana. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Frank E. Osborn, Lee L. Osborn* and *Kenneth D. Osborn,* for appellant.

*H. W. Salwasser* and *Darrow & Rowley,* for appellee.

NICHOLS, J.—This action was by appellee against appellant on a Farmers Mutual Fire Insurance policy to recover damages for loss by reason of the destruction by fire of a frame farm residence and household goods therein.   There was a trial by jury, and a verdict of $450 in favor of appellee; a judgment followed the verdict from which, after motion for a new trial was overruled, this appeal is prosecuted.

The only error relied upon for reversal that is properly assigned is the action of the court in overruling the motion for a new trial.

By §20 of the by-laws of appellant that were made a part of the contract of insurance, which contract was made a part of the complaint and was also read in evidence, it is provided:

"If without the consent of the company in writing the property insured shall be sold or conveyed,

*or the interest of the parties therein be changed in any manner,* whether by act of the parties or by the operation of law, then in every such case and in either of said events the policy shall cease to be in force and effect."

It is claimed by appellant that after the policy was issued appellee sold the property to one Meyer and placed such purchaser in possession thereof,. and that thereby the policy ceased and became of no force and effect.

It appears by the undisputed evidence in this case that on March 12, 1917, appellee's wife and Henry C. Meyer and wife met at the Peoples Trust and Savings Bank of Laporte, Indiana, at which time H. H. Keller, secretary-treasurer of that institution, wrote for them a contract for the sale of the real estate upon which the building involved in this controversy was located, the consideration therefor being $3,800. This contract is not in evidence, though it was made in duplicate and left in the control of the parties involved in the real estate deal, one copy being made for the Olsons and one for the Meyers. It appears that one of the copies, or another copy, was kept with Keller in the bank. It does not appear by the direct evidence that this contract was signed by appellee. It does appear, however, that such contract was accepted by appellee, for at the time that the same was prepared a deed of conveyance was prepared, and, having been signed by appellee's wife, it was sent to appellee for execution, and on April 9, in a letter inclosing it to Mr. Keller, who was acting for both parties, he stated that he understood that the interest on the deferred payments started from the date that the contract was made or date of sale. On said March 12, 1917, Mr. Meyer, appellee's grantee in the deed, stated that "after we come to an agreement I left $600 for good faith." The $600 referred to was

left in the form of a certificate of deposit which was made "payable to the order of O. E. and May Olson on return of this certificate properly endorsed." At the time that the $600 certificate of deposit in form aforesaid was left with Mr. Keller, Meyer stated that he owned a property in Kewanee, Illinois, which, if he could sell, would enable him to make an additional payment of $1,200, which with the $600 already paid would make $1,800, in which event the mortgage to be given would be for $2,000. After this date Meyers sold the Kewanee property and left with Keller a certificate of deposit for $1,200 "payable to the order of O. E. and May Olson on the return of this certificate properly endorsed." At the time that such certificate was left with Keller, to wit, April 4, 1917, a mortgage in the sum of $2,000 signed by said Meyer and wife dated April 1, 1917, and acknowledged April 4, 1917, was left by Meyer with Keller. While we are unable to give the terms of the contract of sale in full, it is clear that it was of such absolute character that, coupled with the transactions hereinbefore set out, said Meyer and wife, grantees in the deed, on the faith of such contract and transactions moved from Kewanee, Illinois, into the dwelling house involved, which was located upon the real estate conveyed on April 2, 1917.

It seems that an abstract was furnished by appellee to the purchasers, and that it was in their possession at the time of the fire and was destroyed by fire. It does not appear that this abstract in any way figured further in the deal. It will be observed that the deed and mortgage, both duly executed and acknowledged, and the $1,800 subject to the order of appellee, were all in the hands of the common agent before the time of the fire. There was nothing further to be done, and nothing further was done, except to deliver the papers and money to the respective parties entitled thereto.

This was done some time after the fire. On April 9, 1917, said Keller, agent as aforesaid, stated in his letter to Mrs. Olson that the Meyers had a sick child at their house, and that it might be about two or three days before he could get them again, and that he would close the matter as soon as possible. In the same letter he requested that the insurance policy be sent, and that they should take care to sign the assignment part of the policy which was upon the back of it. The house involved was destroyed by fire April 14, 1917, at which time Meyer and his wife were in full possession thereof, while the insurance policy unassigned was in the possession of appellee.

Keeping before us the provision of the policy that, if the property insured be sold or conveyed, *or if the interest of the parties therein be changed in any manner,* the policy should become void and of no effect, we proceed to determine whether the transaction hereinbefore set out constituted such a change of interest of the parties as to make the policy without force and effect.

In the case of *Brickell* v. *Atlas Assurance Co.* (1909), 10 Cal. App. 17, 101 Pac. 16, it was held that where under a policy of fire insurance providing that the policy shall be void if any change takes place in the interest, title, or possession of the subject of insurance, the contract for the sale and purchase of the insured premises transferring possession to the purchaser under fixed terms of payment, without any transfer or assignment of the insurance policy, or without the consent of the insured, vitiates the policy and no recovery can be had thereon. The court in its discussion of the case says that there is a distinction between the word "interest" and the word "title," the word "interest" being broader and more comprehensive.

In *Fire Assn., etc.* v. *Perry* (1916), (Tex. Civ. App.) 185 S. W. 374, it was held that under a policy of fire

insurance a conditional sale was such a change in the interest, title and possession of the insured property as to avoid the policy and defeat the insured's recovery thereon.

The case of *Wiley* v. *London, etc., Ins. Co.* (1914), 89 Conn. 35, 92 Atl. 678, holds that a provision avoiding a policy in case of change of the insured's interest is valid, being reasonable because affecting the moral hazard.

*Phoenix Ins. Co.* v. *Quinette* (1912), 36 Okla. 384, 128 Pac. 722, holds that a conditional sale of an insured stock of merchandise reserving the title until the price is paid is a change of interest within the provision avoiding the policy in case of such change.

In the case of *Gibb* v. *Philadelphia Fire Ins. Co.* (1894), 59 Minn. 267, 61 N. W. 137, 50 Am. St. 405, there was a provision in the policy as follows: "This entire policy, * * * shall be void · * * * if any change other than by the death of an insured take place in the interest, title, or possession of the subject of insurance * * *.'" In that case appellant by the contract of sale in writing sold the premises involved to one Kelly for $2,500 subject to a mortgage of $1,200, $300 cash, and the remainder in installments of $50 every sixty days until paid, said Kelly to have possession of the premises with an agreement that in the event of any default appellant should have possession at his option. Kelly entered into the possession of the building and premises and occupied the same until the time of the fire without default in payment. It was held by the court that there was a breach of the condition of the policy and therefore no right of recovery thereon. The court held in substance that, where the condition is against any change in the title, there is no breach unless there is a change in the legal title; that, as long as the insured retains the legal title and the insurable interest in the premises, the policy is not voided by

transfer of the equitable title, but that such principle does not apply where the condition is against any change of interest. The court held that the terms *"title"* and *"interest"* are not synonymous, the word "interest" being broader than the word "title" and including both the legal and equitable rights. Other cases to the same effect are: *Skinner & Sons' Co.* v. *Houghton* (1900), 92 Md. 68, 48 Atl. 85, 89, 84 Am. St. 485; *Davidson* v. *Hawkeye Ins. Co.* (1887), 71 Iowa 532, 32 N. W. 514, 60 Am. Rep. 818; *Gorsch* v. *Niagara Fire Ins. Co.* (1910), 68 Misc. Rep. 344, 123 N. Y. Supp. 877; *Brighton Beach Racing Assn.* v. *Home Ins. Co.* (1906), 113 App. Div. 728, 99 N. Y. Supp. 219; *Manning* v. *North British, etc., Ins. Co.* (1907), 123 Mo. App. 456, 99 S. W. 1095; *Finkbohner* v. *Glens Falls Ins. Co.* (1907), 6 Cal. App. 379, 92 Pac. 318; *Rochester German Ins. Co.* v. *Monumental Sav. Assn.* (1908), 107 Va. 701, 60 S. E. 93; *Widincamp* v. *Phenix Ins. Co.* (1908), 4 Ga. App. 759, 62 S. E. 478; *Cardwell* v. *Virginia State Ins. Co.* (1916), 198 Ala. 211, 73 South. 466; *Vancouver Nat. Bank* v. *Law Union, etc., Ins. Co.* (1907), 153 Fed. 440.

In the last case cited the same provision is found as in the case of *Gibb* v. *Philadelphia Fire Ins. Co., supra.* By the contract of sale it was provided that: "The first party is to furnish said second party a complete abstract of title to said property showing a perfect title in said first party, which title is to be passed upon and approved by the attorney of said second party. * * * Said first party is to have not to exceed sixty days to complete said abstract and perfect said title and prepare and furnish said warranty deed and bill of sale. When said first party perfects his title and makes and delivers a good and sufficient warranty deed of said real estate and a bill of sale conveying and transferring all of said property to said second party free from all in-

cumbrances * * *, then said second party is to immediately pay said first party the balance of said purchase price of forty thousand dollars ($40,000), * * *. The said second party is to have full possession and control of said property from this date and is to conduct and carry on said business.'" After a full discussion of the question presented by this contract, the court held that, under it and under the evidence, the sale was absolute and not conditional, that it took effect at once to transfer the equitable title, and that as the contract had the effect of violating the condition of the policy it relieved the insurance company of all liability thereunder.

The rule is stated as follows in 14 R. C. L., §297: "In the absence of any provision on the subject the execution by the insured of an executory contract for the sale of the insured premises does not void the policy. Even under the usual provision voiding the policy for an alienation, or change of title or interest, the delivery of the deed in escrow, or the execution of a contract of sale, possession being retained by the vendor, does not, according to the prevailing view, avoid the policy, though authority may be found to the contrary. Where, however, possession is delivered to the vendee under such a contract there is a change of title or interest." Numerous authorities are cited sustaining the principles above quoted.

In the instant case there was a change of possession on April 2, twelve days before the fire on April 14; the purchase money and the note secured by mortgage had been deposited with Keller to be held by him until the deed was furnished by appellee. Such deed was furnished and delivered to Keller for the use of Meyer, the purchaser. The abstract was furnished and delivered to him, although it seems afterward to have been destroyed by fire. There was nothing

further for appellee or his purchaser to do; the conditions were fully complied with.

In 10 R. C. L. §20, the following statement as to when an instrument such as a deed in this case becomes operative is stated: "Some courts hold that an escrow does not take effect as a fully executed deed until there has been a rightful delivery to the grantee; but the more logical position * * * is that upon the happening of the event or the performance of the condition upon which manual delivery should be made by the depositary to the grantee, although not in fact a physical delivery to him, a deed theretofore in escrow becomes ipso facto the deed of the grantee in whom the title vests, and that thenceforth the depositary or holder is regarded as the mere agent or trustee of the grantee." Numerous authorities are cited. Applying these principles to the case before us, we must hold that after the policy was written and before the fire there was such a change not only of the interest but of the title and of the possession of the real estate, including the dwelling house involved, as invalidated the policy.

We are not unmindful of the holding in the case of *Corr* v. *Martin* (1906), 37 Ind. App. 655, 77 N. E. 870, that a deed in escrow before delivery conveys no 2-4. title, but this case and the case it cites, *Burkam* v. *Burk* (1884), 96 Ind. 270, 273, are cases in which the deeds held in escrow were being held for the performance of conditions, and, of course, the delivery without such performance could convey no title. In the case at bar the conditions which authorized Keller to deliver the deed had been performed and under such circumstances, as we view the law, Keller was then the agent for the grantee Meyer for whom, after the conditions were performed as aforesaid, he held the deed; but, even if there had been no transfer of the legal title because the deed had not yet been delivered by Keller

to Meyer at the time of the fire, it cannot be successfully claimed that Meyer was not the owner of the equitable interest and in possession, and therefore that there had been no change of interest or possession. We hold that the policy was invalidated not only as to the house, but as to the personal property situated therein, for we must regard the policy as entire and indivisible; the property insured was so situated that the risk upon the dwelling could not be affected without affecting the risk upon the items of personal property. Such being the case, the breach of one of the conditions of the policy of necessity affects the entire insurance. *Phenix Ins. Co.* v. *Pickel* (1889), 119 Ind. 155, 21 N. E. 546, 12 Am. St. 393; *Pickel* v. *Phenix Ins. Co.* (1889), 119 Ind. 291, 21 N. E. 898; *Havens* v. *Home Ins. Co.* (1887), 111 Ind. 90, 12 N. E. 137, 60 Am. Rep. 689; *Manchester Fire, etc., Co.* v. *Glenn* (1895), 13 Ind. App. 365, 40 N. E. 926, 41 N. E. 847, 55 Am. St. 225.

Appellant insists as one of its reasons for a new trial that the court erred in overruling its motion for judgment in its favor on the answers of the jury to

5. the interrogatories propounded notwithstanding the general verdict. It has been many times held that the inconsistency of the special findings with the general verdict is not a cause for retrial. *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381, 74 N. E. 509. Other questions are presented but, in view of the conclusion which we have reached in this case, we deem it wholly unnecessary to consider them.

The judgment is reversed, with instructions to the trial court to grant a new trial.